IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

FEDERAL DEPOSIT INSURANCE          *
CORPORATION, *as Receiver for*
*GulfSouth Private Bank*,           *

    Plaintiff,                       *

vs.                                *        CASE NO. 4:16-cv-284 (CDL)

WILLIAM L. AMOS, JENIFER C.        *
AMOS, and WLA INVESTMENTS INC.,
                                   *
    Defendants.
                                   *
_____

                         O R D E R

    Presently pending before the Court are two motions filed by
Plaintiff Federal Deposit Insurance Corporation ("FDIC-R"), as
Receiver for GulfSouth Private Bank.  First, FDIC-R filed a
motion for entry of an order requiring the production and levy
of shares Defendant William L. Amos owns in certain corporations
(ECF No. 27).  At the hearing on the pending motions, the
parties represented that they would confer in a good faith
effort to propose a consent order to resolve this motion.  The
parties shall submit a proposed consent order by April 6, 2017.

    FDIC-R also filed a Motion for Contempt (ECF No. 39).  It
argues that Defendants William L. Amos and Jenifer Amos, along
with William L. Amos & Co. ("Amos & Co.") and Paladin Beach
Investments, LLC ("Paladin"), violated the Consent Order
Granting Preliminary Injunction (ECF No. 17).  Defendants deny

violating the preliminary injunction order.  For the reasons set forth below, the Court concludes that FDIC-R has not established by clear and convincing evidence that Defendants violated the court order.  Accordingly, FDIC-R's motion for contempt is denied.

DISCUSSION

To establish civil contempt, FDIC-R must show, by clear and convincing evidence, that Defendants violated a court order. "The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was *clear and unambiguous*; and (3) the alleged violator had the ability to comply with the order." *Ga. Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007) (citing *McGregor v. Chierico*, 206 F.3d 1378, 1383 (11th Cir. 2000)).  Here, Defendants argue that they did not violate any clear and unambiguous provision in the preliminary injunction order.

I.   **Expenditures Made By Amos & Co.**

The preliminary injunction order, which was prepared and agreed to by the parties, states that Amos & Co. may not spend its income "other than to pay ordinary business expenses of Amos & Co. in accordance with the budget attached [to the preliminary injunction order] as Exhibit C."  Consent Order Granting Prelim. Inj. ¶ 4(b), ECF No. 17.  Exhibit C, which is described as the relevant "budget,"  lists three categories of expenses—car

payments, life insurance payments, and taxes.  But it includes no dollar amounts for any category and instead has blank lines next to each "budget" category.  Notwithstanding the ambiguity created by the absence of any budget amounts in the so-called "budget," FDIC-R argues that Amos & Co. violated the preliminary injunction order by making the following expenditures: 1) more than $100,000 in premiums on a whole life insurance policy on Mr. Amos's life; 2) legal expenses of more than $75,000; 3) a $15,000 loan to Paladin; 4) credit card payments totaling approximately $2,200; and 5) payments to Verizon totaling nearly $900.[1]  The Court will address each expenditure in turn.

A.   Life Insurance Premiums

FDIC-R acknowledges that the parties contemplated that certain life insurance premium payments would be permitted.  But it maintains that the amounts paid by Amos & Co. were excessive and thus not an ordinary business expense.  Amos & Co. made premium payments of roughly $16,000 per month on whole life insurance policies on Mr. Amos's life.  The ultimate beneficiary

---

[1] FDIC-R also claims that Amos & Co. made unauthorized withdrawals totaling approximately $388,000 in October 2016 and made unauthorized withdrawals totaling approximately $90,000 in November 2016.  Based on the Court's review of the record, much of the $388,000 "withdrawal" was for tax payments and other expenditures that were made before entry of the preliminary injunction order.  As for the rest of the October 2016 "withdrawal," almost all of it eventually made its way back into the Amos & Co. bank account, as did most of the November 2016 "withdrawal."  And FDIC-R did not explain how expenditure of the amounts that were not redeposited violated the preliminary injunction order.

of these policies is Mrs. Amos, the current owner of Amos & Co. According to Defendants, Mr. Amos is the president of Amos & Co., and Amos & Co. began paying the premiums on the policies several years before entry of the preliminary injunction order.

The plain language of the preliminary injunction order clearly omits any dollar limitation on the amount of life insurance premiums that may be paid by Amos & Co. The only limitation is that such payments must be an ordinary business expense of Amos & Co. While the life insurance policies and corresponding premiums certainly fall within the upper range for such benefits, insufficient evidence has been presented to convince the Court that the premiums clearly are not an ordinary business expense such that they constitute a violation of the Court's order. The parties contemplated that Amos & Co. would be permitted to continue paying the life insurance premiums that it had been paying for several years, although FDIC-R apparently did not know how much the premiums were or any other details about the life insurance. If FDIC-R wanted to limit the monthly premium payments, it should have filled in the empty blank on the budget. Even if parol evidence supported FDIC-R's position that the premium payments were excessive, FDIC-R has not met its burden of proving by clear and convincing evidence that the preliminary injunction order clearly and unambiguously

prohibited the premium payments. Therefore, those payments cannot be the basis for a contempt finding.

### B.   Other Expenses

FDIC-R argues that other expenditures made by Amos & Co. that fell outside the categories listed in Exhibit C—life insurance premiums, car payments, and taxes—were prohibited by the preliminary injunction order. These expenditures include: 1) legal expenses of more than $75,000; 2) a $15,000 loan to Paladin Beach Investments, LLC; 3) credit card payments totaling approximately $2,200; and 4) payments to Verizon totaling nearly $900.

As noted previously, for there to be a finding of contempt, the order that was allegedly violated must be unambiguous and the evidence of the violation must be clear and convincing. The parties' failure to include a completed budget as an exhibit to the consent preliminary injunction order created an ambiguity regarding Amos & Co.'s permitted expenditures. One interpretation of that provision is that the parties agreed that expenditures could only be made within the three budget categories listed in Exhibit C. But another equally plausible interpretation could be that the parties never reached a meeting of the minds on Exhibit C, and thus it should be ignored. If Exhibit C is ignored, Amos & Co. was permitted to make any expenditure that was within the ordinary course of its business.

Unconvinced that any parol evidence makes the agreement any clearer, the Court finds for purposes of the pending motion for contempt that Amos & Co. can be found in contempt only if FDIC-R established by clear and convincing evidence that Amos & Co.'s expenditures were not "ordinary business expenses."

FDIC-R failed to carry this high burden. Defendants assert that Amos & Co. routinely paid these types of expenses in the ordinary course of its business prior to entry of the preliminary injunction order. FDIC-R argues that these types of expenses are not logical or necessary for a business like Amos & Co., but the parties did not define "ordinary course of business" to have such a narrow meaning. And, FDIC-R did not present any evidence to establish that Amos & Co. did not routinely pay such expenses in the ordinary course of its business. It is not clear for purposes of a contempt citation that the preliminary injunction order clearly and unambiguously prohibited the expenditures for legal expenses, a loan to Paladin, credit card bills, and Verizon bills.

The Court observes, however, that while FDIC-R failed to carry its burden of proof to establish contempt, the Court is skeptical as to whether all of these expenditures, particularly the loan to Paladin, were ordinary business expenses of Amos & Co. Accordingly, the Court confirms its oral order issued at the hearing that Amos & Co. shall not make any additional

payments, loans, or transfers to Paladin without first obtaining permission from the Court.

## II.  Expenditures Made By Paladin

Under the preliminary injunction order, Paladin may not take several actions with regard to its real property in Biloxi, Mississippi.  Consent Order Granting Prelim. Inj. ¶ 6.  Paladin also may not spend income generated by the Biloxi property, *id.* ¶ 6(b), and may not spend money that was in its possession as of the date of the preliminary injunction order, *id* ¶ 6(e).

FDIC-R contends that Paladin violated the preliminary injunction order in November 2016 by spending approximately $1,100 on property taxes and homeowners' association dues associated with an Escambia County, Florida condominium owned by Paladin.[2]  During the same month, two deposits totaling $3,600 were made to Paladin's account.  It is not clear from the present record whether these deposits were income generated by the Biloxi property, income generated by the Escambia County property, or income from some other source.

The preliminary injunction order does not clearly and unambiguously prohibit Paladin from spending income generated by properties other than the Biloxi property.  It also does not

---

[2]  FDIC-R contends that Paladin "withdrew" $3,101.99 from its account but ignores the fact that a check for $1,849.23 was returned for insufficient funds and was thus not withdrawn.  Defendants presented evidence that approximately $1,100 was used to pay property taxes and homeowners' association dues.  It appears that the remaining $90.96 was for bank charges.

clearly and unambiguously prohibit Paladin from spending money
it receives after entry of the preliminary injunction order
unless that income was generated by the Biloxi property.  Given
that the present record does not establish the source of the
approximately $1,100 Paladin withdrew in November 2016, the
Court finds that FDIC-R has not met its burden of proving by
clear and convincing evidence that these expenditures violated
the preliminary injunction order.  The Court declines to hold
Paladin in contempt for making these payments.

## III. Reprieve, Not Pardon

Defendants have avoided a contempt finding.  But they
should not misinterpret this temporary reprieve as ultimate
victory.  The Court has simply found that FDIC-R did not carry
the heavy burden for establishing contempt.  FDIC-R still holds
what appears to be a substantial valid judgment, and it has
multiple available remedies to collect that judgment.  It
appears to have attempted in good faith to negotiate a
compromise that would maintain the status quo until this action
can be heard on the merits.  Such consent orders are often
preferable to one imposed by the Court without the agreement of
the parties.  Today's ruling should not discourage the parties
from returning to the negotiating table to hammer out a refined,
clear, and uambiguous consent order that maintains the status
quo in a manner that is more advantageous to the parties than a

8

blunt order issued by the Court that may be authorized under the law but detrimental to all parties associated with this litigation.  The Court hastens to add, however, that it does not intend to place undue pressure on the parties to reach such an agreement, and nothing in today's order prevents FDIC-R from pursuing any other remedies under the law.

CONCLUSION

For the reasons set forth above, the Court denies FDIC-R's motion for contempt (ECF No. 39).  The Court defers ruling on FDIC-R's motion for entry of an order requiring the production and levy of shares Defendant William L. Amos owns in certain corporations (ECF No. 27).  The parties shall submit their proposed consent order on that motion by April 6, 2017.

IT IS SO ORDERED, this 3rd day of April, 2017.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA